

CLERK'S OFFICE
A TRUE COPY
Dec 05, 2023
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Tracking of<br>*(Identify the person, property, or object to be tracked )*<br><br>A black 2017 Maserati Granturismo, bearing<br>Wisconsin license plate ATK-9530, VIN:<br>ZAM45VLA9H0203609 | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 23-M-492 (SCD)

## TRACKING WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government shows there is reason to believe that the person, property, or object described above has been involved in and likely will continue to be involved in the criminal activity identified in the application, and  ☑ is located in this district;   ☐ is not now located in this district, but will be at execution;   ☐ the activity in this district relates to domestic or international terrorism;   ☐ other: _____ .

I find that the affidavit(s), and any recorded testimony, establish probable cause to believe that *(check the appropriate box)* ☐ using the object    ☑ installing and using a tracking device to monitor the location of the person, property, or object will satisfy the purpose set out in Fed. R. Crim. P. 41(c) for issuing a warrant.

☑ I find entry into the following vehicle or onto the following private property to be necessary without approval or knowledge of the owner, custodian, or user of the vehicle or property for installing, maintaining, and removing the tracking device: A black 2017 Maserati Granturismo, bearing Wisconsin license plate ATK-9530, VIN: ZAM45VLA9H0203609 and the exterior of 4936 North 40th Street, Milwaukee, Wisconsin.

**YOU ARE COMMANDED** to execute this warrant and begin use of the object or complete any installation authorized by the warrant by __12-15-23__ *(no later than 10 days from the date this warrant was issued)* and may continue to use the device until __1-19-24__ *(no later than 45 days from the date this warrant was issued)*.  The tracking may occur within this district or another district.  To install, maintain, or remove the device, you may enter *(check boxes as appropriate)*

☑ into the vehicle described above        ☑ onto the private property described above
☐ in the daytime 6:00 a.m. to 10:00 p.m.  ☑ at any time in the day or night because good cause has been established.

Within 10 calendar days after the use of the tracking device has ended, the officer executing this warrant must both return it to *(United States Magistrate Judge)* __Hon. Stephen C. Dries__ and — unless delayed notice is authorized below — serve a copy of the warrant on the person who, or whose property or object, was tracked.

☑ Pursuant to 18 U.S.C. § 3103a(b)(1), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and this warrant prohibits the seizure of any tangible property or any wire or electronic communications (as defined in 18 U.S.C § 2510).  I therefore authorize the officer executing this warrant to delay notice to the person who, or whose property or object, will be tracked *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)* ☑ until, the facts justifying, the later specific date of __03/04/2024__ .

Date and time issued:  __12-5-23. 10:20 am__

_Stephen C. Dries_
*Judge's signature*

City and state:   Milwaukee, WI            Honorable Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

Case No.

## Return of Tracking Warrant With Installation

1.   Date and time tracking device installed:  _____

2.   Dates and times tracking device maintained:  _____

3.   Date and time tracking device removed:  _____

4.   The tracking device was used from *(date and time)*:  _____

    to *(date and time)*:  _____ .

## Return of Tracking Warrant Without Installation

1.  Date warrant executed:  _____

2.  The tracking information was obtained from *(date and time)*:  _____

    to *(date and time)*:  _____ .

## Certification

I declare under the penalty of perjury that this return is correct and was returned along with the original warrant to the designated judge.


Date:  _____

_____
*Executing officer's signature*

_____
*Printed name and title*

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin



**CLERK'S OFFICE**
**A TRUE COPY**
**Dec 05, 2023**
**s/ JDH**
**Deputy Clerk, U.S. District Court**
**Eastern District of Wisconsin**

| | |
|---|---|
| In the Matter of the Tracking of<br>*(Identify the person to be tracked or describe<br>the object or property to be used for tracking)*<br>A black 2017 Maserati Granturismo, bearing<br>Wisconsin license plate ATK-9530, VIN:<br>ZAM45VLA9H0203609 | )<br>)<br>)<br>)  Case No.  **23-M-492 (SCD)**<br>)<br>) |

## APPLICATION FOR A TRACKING WARRANT

I, a federal law enforcement officer or attorney for the government, have reason to believe that the person, property, or object described above has been and likely will continue to be involved in one or more violations of

 21  U.S.C. §841(a)(1)&846 . Therefore, in furtherance of a criminal investigation, I request authority to install and use a tracking device or use the tracking capabilities of the property or object described above to determine location. The application is based on the facts set forth on the attached sheet.

☑ The person, property, or object is located in this district.

☐ The person, property, or object is not now located in this district, but will be at the time of execution.

☐ The activity in this district relates to domestic or international terrorism.

☐ Other:

The tracking will likely reveal these bases for the warrant under Fed. R. Crim. P. 41(c): *(check one or more)*

☑ evidence of a crime;

☐ property designed for use, intended for use, or used in committing a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ a person to be arrested or a person who is unlawfully restrained.

☑ I further request, for purposes of installing, maintaining or removing the tracking device, authority to enter the following vehicle or private property, or both:
A black 2017 Maserati Granturismo, bearing Wisconsin license plate ATK-9530, VIN: ZAM45VLA9H0203609 and the exterior of 4936 North 40th Street, Milwaukee, Wisconsin.

☑ Delayed notice of  90  days (give exact ending date if more than 30 days:   03/04/2024   ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

TYLER OWENBY  Digitally signed by TYLER OWENBY
Date: 2023.12.04 14:17:50 -06'00'

*Applicant's signature*

Tyler Owenby, DEA SA

*Applicant's printed name and title*

Sworn to before me **Telephonically.**

Date:  **12-5-23**

*Judge's signature*

City and state:   Milwaukee, WI

Honorable Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Tyler F. Owenby, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to install and monitor an electronic tracking device to determine the location of a vehicle more particularly described as a black 2017 Maserati Granturismo, bearing Wisconsin license plate ATK-9530, VIN: ZAM45VLA9H0203609 (hereinafter "**Subject Vehicle**")

2. I am a Special Agent with the Drug Enforcement Administration ("DEA"). I have been so employed since July 2021 and am currently assigned to the DEA Milwaukee District Office. As part of my duties as a DEA Special Agent, I investigate criminal violations relating to narcotics trafficking and money laundering offenses, including criminal violations of the Federal Controlled Substance laws, including, but not limited to Title 18, United States Code, Sections 1956, and 1957, and Title 21, United States Code, Sections 841, 843, 846, 848, 952 and 963. I have been involved in electronic surveillance methods, the debriefing of defendants, informants, and witnesses, as well as others who have knowledge of the distribution, transportation, storage, and importation of controlled substances.

3. Prior to my employment with the DEA, I spent the previous five years working as an Analyst assigned to the Columbia Missouri Police Department's Vice Narcotics and Organized Crime Unit. As part of my duties as an Analyst, I was formally trained and certified in the areas of mobile phone forensics, cell tower and phone toll analysis, and advanced open source intelligence gathering techniques.

1

4. I have participated in complex narcotics investigations which involved violations of state and federal controlled substances laws and money laundering laws including Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, and Title 18, United States Code, Sections 1956 and 1957, and other related offenses. More specifically, my training and experience includes the following:

a. I have utilized informants to investigate drug trafficking. Through informant interviews, and extensive debriefings of individuals involved in drug trafficking, I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin and throughout the United States;

b. I have experience conducting street surveillance of individuals engaged in drug trafficking. I have participated in the execution of search warrants where controlled substances, drug paraphernalia, and drug trafficking records were seized;

c. I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, cocaine base (unless otherwise noted, all references to crack cocaine in this affidavit is cocaine base in the form of crack cocaine), ecstasy, and methamphetamine. I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale. I know the street values of different quantities of the various controlled substances;

d. I am familiar with the language utilized over the telephone to discuss drug trafficking, and know that the language is often limited, guarded, and coded;

e. I know that drug traffickers often use electronic equipment and wireless and land line telephones to conduct drug trafficking operations;

f. I know that drug traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such;

g. I know that drug traffickers often put their telephones in nominee names in order to distance themselves from telephones that are utilized to facilitate drug trafficking; and

h. I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use nominees to purchase and/or title these assets in order to avoid scrutiny from law enforcement officials.

2

5.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement officers and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6.      Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a)(1) and 846 (possession with intent to distribute a controlled substance and conspiracy to possess with intent to distribute a controlled substance) have been committed, are being committed, and will be committed by James E. JAMES III, Patrick VAUGHN, Bradley DIDENKO, Jordan MAYRAND, Anton MATTHEWS, Lorenzo GOODEN, Duane WILLIAMS, and others not yet identified.    There is also probable cause to believe that the location of the subject vehicle will constitute evidence of those criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

<u>**PROBABLE CAUSE**</u>

7.      I am currently participating in an investigation of a large-scale fentanyl/cocaine drug trafficking organization herein referred to as the "DTO."  I am familiar with the facts and circumstances regarding this investigation as a result of my personal participation in this investigation, and my review of: (a) consensually recorded telephone conversations and face-to-face meetings; (b) reports prepared by, and information obtained from, other federal, state, and local law enforcement agents and officers, all of whom I believe to be truthful and reliable; (c)

court-authorized electronic communications; and (d) information obtained from cooperating citizen witnesses, confidential sources, and defendants, whose reliability is established herein.[1]

8. The Wisconsin Department of Justice along with the United States Postal Inspection Service and the DEA are working an investigation involving James E. JAMES III (DOB: XX/XX/1988), Patrick VAUGHN (DOB: XX/XX/1967), Bradley DIDENKO (DOB: XX/XX/1973), Jordan MAYRAND (DOB: XX/XX/1979), Anton MATTHEWS (XX/XX/1996), Lorenzo GOODEN (DOB: XX/XX/1987), Duane WILLIAMS (DOB: XX/XX/1998) and others yet to be identified, who are believed to be members of a Milwaukee-area based DTO believed to be sourced from California.

**A.     Background**

9. On February 23, 2023, United States Postal Inspection Service Inspector (USPIS) Kim Lincoln was alerted to a parcel bearing USPS Priority Mail Express tracking number EI 649 372 511 US (wooden crate) being shipped to Jordan Woodman at the address 1940 North 15th Street, Milwaukee, Wisconsin, 53205. The parcel was shipped from California with a return name and address of the "Earthquake Store" located in Burbank California. The address of 1940 North 15th Street does not exist, and the parcel was not delivered. On this same date two individuals showed up at the Hilltop Post Office in Milwaukee, Wisconsin attempting to take custody of the package addressed to Jordan Woodman. The first individual claimed to be James Woodman and further stated to the employee at the post office that he was the nephew of Jordan Woodman. The second individual stated they were Jordan Woodman. However, the post office would not

---

[1] Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

Case 2:23-mj-00492-SCD     Filed 12/05/23     Page 7 of 22     Document 1

relinquish custody of the package because the address on the ID provided by Jordan Woodman was 1942 North 15th Street which did not match the address the parcel was addressed to. Inspector Lincoln ultimately discovered that the parcel contained just over two kilograms of fentanyl.

10. Case agents then examined USPS databases and discovered that parcel EI 649 372 511 US and others were being tracked by IP addresses in both California and Mexico. Case agents identified other packages identical to parcel EI 649 372 511, which contained fentanyl, all addressed to Jordan Woodman. Case agents identified two parcels in Milwaukee, Wisconsin, one parcel in the Saint Louis, Missouri area, and one parcel in northern Illinois.

11. On February 27, 2023, case agents were conducting follow-up regarding parcel EI 649 372 511 at the Hilltop Post Office when two individuals came to the counter attempting to claim the parcel. One of the individuals identified himself to Postal Inspectors as Jordan Woodman. This subject presented an ID Card Receipt from the Wisconsin Department of Transportation issued to Jordan Woodman at 1942 N 15th Street, Milwaukee, Wisconsin, 53205. Once the subject realized that he was speaking with law enforcement officers and not Post Office employees, he and the second subject with him immediately left the post office. Case agents later determined that the identification Woodman presented was false and positively identified him as Patrick VAUGHN, through law enforcement databases. Case agents also identified the subject claiming to be "James" (nephew of Jordan Woodman) as James E. JAMES III, through law enforcement bases. Both James and Vaughn are Milwaukee residents.

12. On June 14, 2023, Task Force Officer (TFO) Mitchell Ward along with USPIS Inspector Kim Lincoln interviewed Patrick VAUGHN regarding this investigation. VAUGHN admitted to attempting to retrieve parcel EI 649 372 511 US from the Hilltop Post Office for his drug supplier nicknamed "400" on February 23, 2023. VAUGHN said he buys small amounts of

cocaine and "weed" (i.e., marijuana) from "400". VAUGHN stated he did not know "400's" real name, but provided 400's telephone number 414-627-2727. VAUGHN used telephone number 414-627-2727 to contact "400" to arrange the purchase of cocaine. VAUGHN stated that "400" uses various cars to deliver cocaine. VAUGHN described "400" as a black male, aged between mid-thirties and early-forties, who had a short or bald hairstyle.

13. Case agents then obtained a court order authorizing electronic surveillance of telephone number 414-627-2727 and reviewed historical call detail records of telephone number 414-627-2727 also. Case agents recognized VAUGHN's number as one of the top callers to telephone number 414-627-2727. From April 14, 2023, to June 14, 2023 VAUGHN was using telephone number 414-998-7482 and communicated 127 times with telephone number 414-627-2727. Case agents know that VAUGHN's phone number is 414-998-7482 because VAUGHN provided case agents consent to review the contents of his phone when he was interviewed on June 14, 2023.

14. Additionally, case agents identified another top caller of telephone number 414-627-2727 as Bradley DIDENKO of 3142 South Pine Street (lower), Milwaukee, WI. DIDENKO was using telephone number 414-881-9687 from the time period of April 19, 2023, to June 16, 2023 and call records reflect 365 call between DIDENKO and the Target Phone. A search of law enforcement data bases showed that Jordan MAYRAND also resided at 3142 South Pine Street (lower), Milwaukee, WI 53207. On June 9, 2023 the West Allis Police Department arrested MAYRAND for several felony drug offences, including possession with the intent to deliver fentanyl (Wisconsin Circuit Court case no.: 2023CF002558).

15. On August 1, 2023, case agents interviewed Bradley DIDENKO. DIDENKO stated that he regularly purchases small amounts of fentanyl from an unknown black male.

6

DIDENKO stated that he calls telephone number 414-627-2727 to arrange the purchase of fentanyl. DIDENKO stated the same person does not always deliver the fentanyl to him after he places an order with telephone number 414-627-2727. DIDENKO stated that the "main guy" is a black male who he knows only by the nickname of "Fast." DIDENKO stated that although he recently has not seen "Fast," "Fast's workers" last sold him a gram of fentanyl on July 31, 2023. DIDENKO said he typically buys between a half gram and a gram of fentanyl every other day. Case agents know that DIDENKO was using telephone number 414-881-9687 to contact telephone number 414-627-2727 because DIDENKO provided consent for case agents to review the contents of his cellular phone when he was interviewed on August 1, 2023.

16. On August 16, 2023, case agents spoke with a confidential source (CS-1) regarding this investigation.[2] CS-1 stated that an individual known as "Fast" sells fentanyl and cocaine in the greater Milwaukee area. CS-1 stated that "Fast" has been using the Target Phone to conduct sales of fentanyl and cocaine for the past year. CS-1 stated that once the order is placed on the Target Phone, either "Fast" or one of his "crew" delivers the narcotics at various locations in the greater Milwaukee area. CS-1 stated that most narcotics transactions with "Fast" occur in public areas chosen by "Fast."

17. On September 20, 2023, the Honorable Stephen C. Dries, United States Magistrate Judge in the Eastern District of Wisconsin, authorized a warrant for electronic surveillance of telephone number 414-627-2727.

---

[2] CS-1's information is credible and reliable because CS-1 has given information concerning individuals involved in illegal activities. CS-1's information has been independently verified through this investigation, including through controlled drug buys, queries of law enforcement databases, and surveillance. CS-1 has made statements against his/her penal interest. CS-1 has felony convictions for Manufacture/Delivery Cocaine and Forgery. CS-1 has no arrests or convictions relating to dishonesty. CS-1 is cooperating with law enforcement for monetary compensation.

## B. Controlled Buys

18. During the below listed controlled buy of controlled substances the CSs placed a recorded phone call to the target, captured audio and video of the controlled purchase, was followed to and from the controlled purchase location, was searched before and after the controlled purchase with no drugs, money, or weapons located, debriefed after the controlled purchase, and the above evidence and statements reviewed and verified by law enforcement. Additionally, the controlled substances were all weighed and tested positive for the listed substance and the target was identified by the CS through photographs.

### a. Controlled Buy October 5, 2023 with telephone number 414-627-2727

19. On October 12, 2023, CS-1 conducted controlled purchase of 1/2 gram of fentanyl and 1 gram of crack cocaine for $130 with Anton MATTHEWS.

20. CS-1 arranged to purchase 1 gram of crack cocaine and 1/2 gram of fentanyl for $130 by calling telephone number 414-627-2727. Telephone number 414-627-2727 was answered by an unknown male who directed CS-1 to come to 4936 North 40th Street, Milwaukee, Wisconsin to complete the transaction.

21. CS-1 explained to case agents that 4936 North 40th Street was a location often used by this DTO, and stated they had been directed to this address on several occasions. CS-1 stated that this was a residential address with a long wheelchair ramp coming from the front door and extending towards the street. Approximately five minutes after CS-1 confirmed the location, CS-1 received another call from telephone number 414-627-2727. CS-1 was then instructed to meet in the area of 7th Street and Capitol in Milwaukee, Wisconsin. CS-1 stated they'd been to this area in the past to conduct transactions and believed there was a house in this area where they would be directed. CS-1 did not recall an exact address.

8

22.     Surveillance had already been established in the area of 7th Street and Capital prior to CS-1 departing the predetermined meet location.  As case agents were leaving the predetermined location with CS-1, surveillance units in the area of 7th and Capitol observed a silver Jeep Cherokee, bearing Wisconsin plates ALY-1398 (Jeep) arriving in front of 4076 North 7th Street, Milwaukee, Wisconsin.  According to the Wisconsin Department of Transportation, ALY-1398 is registered to Anton MATTHEWS at 4076 North 7th Street, and case agents positively identified MATTHEWS as the driver of the Jeep based on MATTHEWS driver's license photograph.

23.     MATTHEWS was observed exiting the Jeep and walking to the front porch area of 4076 North 7th Street.  A short time later, MATTHEWS was observed walking back toward the Jeep and entering the driver's seat.  MATTHEWS was then observed pulling away from the front of the residence and immediately pulling over around the corner on Fiebrantz Avenue, just East of 7th Street.

24.     CS-1 received another phone call from telephone number 414-627-2727 shortly after the Jeep pulled around the corner.  CS-1 was instructed to meet near the alley that runs behind the 7th Street address.  CS-1 was then observed by case agents arriving in the area and pulling directly behind the Jeep on Fiebrantz Avenue.  CS-1 was observed by case agents exiting the CS vehicle and entering the front passenger seat of the Jeep.  CS-1 was inside the Jeep for approximately two minutes before exiting the Jeep and returning to CS'1-s vehicle.  While inside the Jeep, CS-1 obtained suspected controlled substances in exchange for $130.  CS-1 was followed directly back to the predetermined meet location by case agents where CS-1 turned over two small baggies, one containing suspected crack cocaine and one containing suspected fentanyl.  The suspected crack cocaine and suspected fentanyl were later subjected to field tests where they both yielded positive results.  CS-1 was later shown a driver's license photograph of Anton

9

MATTHEWS, who CS-1 positively identified as the individual who sold CS-1 the suspected crack cocaine and suspected fentanyl inside the Jeep. CS-1 stated that MATTHEWS was not the individual CS-1 knew as "Fast."

**b.** **Controlled Buy October 12, 2023, with telephone number 414-627-2727**

25. On October 12, 2023, under the direction of case agents, CS-1 conducted controlled purchase of 1/2 gram of fentanyl and 1 gram of crack cocaine for $130 with Lorenzo GOODEN (DOB: XX/XX1987).

26. CS-1 called telephone number 414-627-2727 and it was again answered by an unknown male. CS-1 was instructed to come to the area of 1st Street and National in Milwaukee, Wisconsin. CS-1 was followed by case agents to the area of 1st Street and National where surveillance had already been established. CS-1 parked on the south side of East Florida Street to the east of 1st Street, Milwaukee, Wisconsin. Approximately two minutes later, case agents observed a black Nissan SUV, bearing Wisconsin plates AKF-5062 (Nissan) arrive in the area and park on the opposite side of Florida Street from CS-1's vehicle.

27. CS-1 exhibited the vehicle and entering the front passenger seat of the Nissan. The Nissan then pulled away east on Florida Street and pulled over in the area of Florida Street and Water Street. The Nissan stopped for a very brief period of time at Florida Street and Water Street and then drove back to where CS-1's vehicle was parked. CS-1 exhibited the Nissan and got back into CS-1's vehicle. While inside the Nissan, CS-1 obtained suspected controlled substances in exchange for $130. The Nissan was under constant visual surveillance by case agents for the duration of the interaction with CS-1. CS-1 was then followed back to the predetermined meeting location by case agents and was under constant visual surveillance the entire time. Once back at the predetermined location CS-1 handed over two small baggies, one containing suspected crack

10

cocaine and the other containing suspected fentanyl. The suspected crack cocaine and suspected fentanyl were later subjected to field tests where they both yielded positive results.

28. CS-1 was later shown a photograph of Lorenzo GOODEN (DOB: XX/XX1987), who CS-1 positively identified as the individual in the black Nissan who had sold them the suspected crack cocaine and suspected fentanyl. Case agents were already familiar with GOODEN as GOODEN had been previously identified by case agents through another investigation. CS-1 stated that GOODEN was not the individual CS-1 knew as "Fast."

        **c.      Controlled Buy October 12, 2023, with telephone number 414-627-2727**

29. On October 26, 2023, CS-1 conducted another controlled purchase of 1/2 gram of fentanyl and 1 gram of crack cocaine for $130 with Duane WILLIAMS.

30. CS-1 called telephone number 414-627-2727, which was again answered by an unknown male. CS-1 was instructed to come to the area of 7th Street and Walnut in Milwaukee, Wisconsin. CS-1 was followed by case agents to the area of North 7th and Walnut where surveillance had already been established. CS-1 ultimately parked the vehicle on West Reservoir Avenue just to the west of North 7th Street. Approximately twenty minutes after CS-1 parked on West Reservoir Avenue, case agents observed a silver Honda Accord, bearing Wisconsin plates ANY-6044 (Accord) arrive in the area and park near CS-1's vehicle. CS-1 was then observed exiting the vehicle and walking to the Honda. CS-1 was observed leaning into the passenger window of the Accord for approximately three minutes and then was observed walking back to CS-1's vehicle and departing the area. While leaning into the passenger window of the Accord, CS-1 obtained suspected controlled substances in exchange for $130. Once back at the predetermined location CS-1 handed over the suspected controlled substances to case agents. The

11

suspected crack cocaine and suspected fentanyl were later subjected to field tests where they both yielded positive results.

31. Case agents reviewed the video recording of the controlled buy and law enforcement databases. Case agents obtained and compared booking photographs to the video recording and determined that Duane WILLIAMS (DOB: XX/XX/1998) was the driver of the Accord, who provided the controlled substances to CS-1.

32. CS-1 was later shown a photograph of WILLIAMS to which CS-1 positively identified as the individual who had sold CS-1 the suspected crack cocaine and suspected fentanyl. CS-1 further stated that they believe WILLIAMS lives at 4936 North 40th Street, Milwaukee, Wisconsin, due to previous interactions with WILLIAMS at this address.

33. Case agents have conducted physical surveillance of 4936 North 40th Street, Milwaukee, Wisconsin, and have observed the Accord parked in the driveway on multiple occasions. Additionally, case agents observed DIDENKO meet with the Accord on July 31, 2023 in the alley behind DIDENKO's residence. On this occasion, case agents observed what appeared to be a hand-to-hand transaction between DIDENKO and the driver of the Accord. Based on my training, experience, and investigation into the DTO, the hand-to-hand transaction was consistent with a drug transaction.

> **d. Controlled Buy November 13, 2023, with telephone number 414-627-2727**

34. On November 13, 2023, CS-1 conducted another controlled purchase of fentanyl and crack cocaine for $130 with Duane WILLIAMS.

35. On November 13, 2023, case agents met CS-1 at a predetermined location and CS-1 called telephone number 414-627-2727, and the call went unanswered. A few moments later

12

CS-1 received an incoming call from telephone number 414-627-2727 and the individual calling instructed CS-1 to go to the area of North 41st Street and West Hampton Avenue. CS-1 believed the person on telephone number 414-627-2727 was the same individual (Duane WILLIAMS) that CS-1 had met with on October 26, 2023.

36. CS-1 was followed by case agents to the 4500 block of North Sherman Boulevard, Milwaukee, Wisconsin. CS-1 received an incoming call from telephone number 414-627-2727and was directed to go to the area of North 14th Street and West Capitol Drive. Prior to CS-1 arriving, case agents established surveillance in the 3900 block of North 14th Street in anticipation of the deal. Once arriving in the area case agents observed WILLIAMS occupying the driver's seat of the Accord which was parked in front of 3943 North 14th Street. Case agents also observed an unknown female passenger in the Accord. Once CS-1 arrived in the area CS-1 was observed parking on the west side of the street, directly in front of the Accord. CS-1 was then observed exiting their vehicle and walking to the passenger side of the Accord where CS-1 engaged with the occupants of the Accord through the open passenger window. CS-1 obtained the suspected controlled substances in exchange for $130 with WILLIAMS. After completing the controlled purchase, CS-1 walked back to their vehicle and departing the area.

37. Once back at the predetermined location CS-1 handed over approximately one gram of suspected fentanyl and one gram of suspected crack cocaine to case agents. The suspected crack cocaine and suspected fentanyl were later subjected to field tests where they both yielded positive results.

38. CS-1 stated that they had observed two Ziplock bags in WILLIAMS lap, one containing what appeared to CS-1 as "at least five ounces of purple fentanyl" and the other contained what appeared to contain "three ounces of cocaine." CS-1 stated that WILLIAMS

13

retrieved small amounts of both substances and weighed them on a small digital scale located on the arm rest of the Accord.

        e.        **Controlled Buy November 22, 2023, with telephone number 414-627-2727**

39.      On November 22, 2023, CS-1 conducted another controlled purchase of fentanyl and crack cocaine for $130 with Duane WILLIAMS.

40.      Case agents met CS-1 at a predetermined location and CS-1 called telephone number 414-627-2727. The call went unanswered. A few moments later, CS-1 received an incoming call from telephone number 414-627-2727. CS-1 answered the call and was ultimately instructed to come to the area of North 40th Street and West Hampton Avenue, Milwaukee, Wisconsin. Based on the prior controlled buys and investigation into the DTO, case agents were already aware that Duane WILLIAMS lived at 4936 North 40th Street and surveillance units were sent to that location after the phone call between CS-1 and telephone number 414-627-2727.

41.      Once surveillance units were established, a black Maserati sedan (**Subject Vehicle**) was observed back into the driveway of 4936 North 40th Street and case agents observed a black male occupying the driver's seat. CS-1 was followed by case agents from predetermined location to the area of the 4900 block of North 40th Street. CS-1 parked their vehicle on the east side of the road. CS-1 was observed walking to the **Subject Vehicle** and engaging with the driver of the **Subject Vehicle** through the open driver's window. CS-1 obtained the suspected controlled substances in exchange for $130 with WILLIAMS. CS-1 walked back to their vehicle and departing the area.

42.      Once CS-1 had departed the area, case agents were able to observe the first three characters of the license plate on the **Subject Vehicle** to be ATK. A further search of law

14

enforcement databases showed the full plate of the **Subject Vehicle** to be Wisconsin license plate ATK-9530. Case agents determine the **Subject Vehicle** is as a black 2017 Maserati Granturismo, bearing Wisconsin license plate ATK-9530, with a VIN: ZAM45VLA9H0203609. According to the Wisconsin Department of Transportation the **Subject Vehicle** is registered to Jimmy Lee DURANT Jr with an address of 4631 Sonseeahray Drive, Hubertus, Wisconsin. Through the affiant's training and experience the affiant knows that it's common for drug traffickers to use vehicles not registered to themselves to avoid identification. Case agents are still attempting to identify the connection between DURANT and WILLIAMS or the DTO.

43. Following the controlled purchase case agents again met with CS-1 at a predetermined location. Once at the predetermined location CS-1 handed over approximately one-half gram of suspected fentanyl and one-half gram of suspected crack cocaine to case agents. The suspected crack cocaine and suspected fentanyl were later subjected to field tests where they both yielded positive results.

44. CS-1 stated they had observed two plastic Ziploc bags in WILLIAMS lap, once containing what appeared to CS-1 to be "a large amount of purple fentanyl" and the other contained what appeared to contain "an ounce of cocaine." CS-1 stated that WILLIAMS had retrieved small amounts from each bag and weighted them on a small digital scale located on the arm rest of the Maserati and then handed CS-1 loose amounts of each product, without a container. CS-1 also observed a large stack of US Currency located near the gear shifter of the **Subject Vehicle** that CS-1 estimate to be six inches thick.

45. On the afternoon of November 27, 2023, case agents were conducting surveillance at WILLIAMS residence, 4936 North 40th Street, Milwaukee, Wisconsin. A case agent observed the **Subject Vehicle** parked in the driveway. At approximately 1:54 p.m. WILLIAMS exited the

15

front door of the residence and entered the driver's seat of the **Subject Vehicle**. WILLIAMS ultimately departed the area at a high rate of speed in the **Subject Vehicle**.

   e.  **Controlled Buy November 30, 2023, with telephone number 414-627-2727**

46. On November 30, 2023 CS-1 conducted another controlled purchase of fentanyl and crack cocaine in exchange of $130 USC with Duane WILLIAMS, who was using the **Subject Vehicle**.

47. Case agents met CS-1 at a predetermined location and CS-1 called telephone number 414-627-2727. The call went unanswered. Several minutes later CS-1 called telephone number 414-627-2727 and received instructions to come to the area of North 7th Street and West Walnut Street, Milwaukee, Wisconsin.

48. In preparation for this buy case agents had already established surveillance in the area of WILLIAMS's residence, 4936 North 40th Street, Milwaukee, Wisconsin. The **Subject Vehicle** was observed parked in the driveway of 4936 North 40th Street when surveillance units were established in the area. Shortly after CS-1 made phone contact with telephone number 414-627-2727, WILLIAMS was observed leaving the front door of the residence and entering the driver's seat of the **Subject Vehicle**. WILLIAMS was followed by surveillance units continuously from the time he left his residence until he arrived in the area of North 7th Street and West Reservoir Avenue, which is very near the intersection of North 7th Street and West Walnut Street. WILLIAMS did not make any stops or meet with any other individuals prior to meeting with CS-1. CS-1 had already been observed arriving in the area, and when the **Subject Vehicle** arrived. CS-1 was observed exiting their vehicle and walking to the passenger window of the **Subject Vehicle**. CS-1 was observed engaging with WILLIAMS through the open passenger

16

window and then walking back to their vehicle.  CS-1 obtained the suspect controlled substances from WILLIAMS in exchange for $130.  After CS-1 was back in their vehicle, surveillance units followed the **Subject Vehicle** away from the area and observed WILLIAMS conduct another hand-to-hand transaction while sitting in the **Subject Vehicle** near the intersection of 12th Street and Arthur in Milwaukee, Wisconsin.  Based on my training, experience, and investigation into the DTO, the hand-to-hand transaction was consistent with a drug transaction.  Surveillance was terminated on the **Subject Vehicle** at this time due to WILLIAMS erratic driving.

49.     Following the controlled purchase case agents again met with CS-1 at a predetermined location.  Once at the predetermined location CS-1 handed over approximately one gram of suspected fentanyl and one gram of suspected crack cocaine to case agents.  The suspected crack cocaine and suspected fentanyl were later subjected to field tests where they both yielded positive results.  CS-1 stated they had observed WILLIAMS weighing the fentanyl and crack cocaine on a scale near the center console of the **Subject Vehicle.**  CS-1 stated that WILLIAMS had handed CS-1 loose amounts of each product, without a container and CS-1 later placed the drugs in a small baggie once back inside CS-1's vehicle.

## TECHNICAL BACKGROUND

50.     Law enforcement has observed WILLIAMS use the **Subject Vehicle** during two controlled buys and during surveillance of WILLIAMS and his residence.  WILLIAMS was most recently observed using the **Subject Vehicle** on November 30, 2023.

51.     Law enforcement therefore believes, based on the foregoing, that the **Subject Vehicle** is presently within the Eastern District of Wisconsin.

52.     In order to track the movement of the **Subject Vehicle** effectively and to decrease the chance of detection, law enforcement seeks authorization to place a tracking device on the

17

**Subject Vehicle** while it is in the Eastern District of Wisconsin. Because WILLIAMS sometimes parks the **Subject Vehicle** in driveways and on other private property, it may be necessary to enter onto private property (specifically outside the residence of 4936 North 40th Street, Milwaukee, Wisconsin) and/or move the **Subject Vehicle** to affect the installation, repair, replacement, and removal of the tracking device.

53. To ensure the safety of the executing officers and to avoid premature disclosure of the investigation, it is requested that the court authorize installation, maintenance, and removal of the tracking device during both daytime and nighttime hours. Based on my training and experience, individuals engaged in drug trafficking and other criminal conduct are extremely

54. In the event the Court grants this application, there will be periodic monitoring of the tracking device during both daytime and nighttime hours for a period not to exceed 45 days following issuance of the warrant. The tracking device may produce signals from inside private garages or other such locations not open to the public or visual surveillance.

**CONCLUSION**

55. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117, that authorizes law enforcement, including but not limited to your affiant and technicians assisting in the above-described investigation, to install a tracking device on the **Subject Vehicle** within the Eastern District of Wisconsin within 10 days of the issuance of the proposed warrant; to maintain, repair, and/or replace the tracking device as necessary, and to remove the tracking device from the **Subject Vehicle** after the use of the tracking device has ended: to install, maintain, and remove the tracking device during both daytime and nighttime hours; to surreptitiously enter the outside property of and/or move the **Subject Vehicle** to effect the installation, repair, replacement, and

18

removal of the tracking device; and to monitor the tracking device for a period of 45 days following the issuance of the warrant, including when the tracking device is inside private garages and other locations not open to the public or visual surveillance, both within and outside the Eastern District of Wisconsin.

56.     In accordance with 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), I further request that the warrant delay notification of the execution of the warrant for 90 days after the end of the authorized period of tracking (including any extensions thereof) because there is reasonable cause to believe that providing immediate notification may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice would seriously jeopardize the ongoing investigation by prematurely revealing its existence and giving suspects an opportunity to flee from prosecution, destroy or tamper with evidence, intimidate potential witnesses, notify confederates, and change patterns of behavior.